UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 07-77-GWU

LARRY K. ALDRIDGE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>   Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

07-77 Larry K. Aldridge

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-77 Larry K. Aldridge

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Larry K. Aldridge, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of reactive airway disease, borderline intellectual functioning, mild obesity, and obstructive sleep apnea. (Tr. 17). Nevertheless, he concluded that the plaintiff retained the residual functional capacity to perform his past relevant work as a security guard, or, in the alternative, other unskilled jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 17-20). The Appeals Council declined to review, and this action follows.

The only question presented on appeal is whether the plaintiff meets or equals the Commissioner's Listing of Impairment (LOI) 12.05C, captioned "Mild Mental Retardation." LOI 12.05C provides that an individual is considered to be disabled if he shows (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing additional and

07-77  Larry K. Aldridge

significant work-related limitation of function.  The claimant must also satisfy the "diagnostic description" of mental retardation in the introductory paragraph of LOI 12.05, which states that "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case, the plaintiff, who was 43 years old at the time of the July 10, 2006 administrative hearing (Tr. 218), submitted IQ testing conducted on April 2, 1979 when he was aged 15 years and 10 months, showing a verbal IQ of 70, a performance IQ of 80, and a full scale IQ of 73.  (Tr. 138-9).  The Commissioner's regulations provide that "[i]ntelligence test results obtained at age 16 or older may be assumed to apply to the subject's current status provided they are compatible with the individual's current behavior.  However, when test results obtained in the past are incompatible with current behavior, current testing will be required." Social Security Ruling (SSR) 82-54, p. 6.[1]

---

[1] While the Commissioner notes that it is considered to be the plaintiff's burden of demonstrating that their impairment meets or equals a listed impairment, Foster, 279 F.3d at 354, this is a case in which the language of SSR 82-54 squarely places the burden on the defendant to obtain additional testing.

8

07-77  Larry K. Aldridge

In the present case, the ALJ did not question the validity of the IQ score of 70 in terms of reliability of testing, albeit describing it as "remote," but he noted that "he has a significant work history of several years after high school[,] including semiskilled work identified by the vocational expert[,] and otherwise displays adaptive functioning skills[,] all of which is inconsistent with mild mental retardation[,] but rather demonstrates borderline intellectual functioning." (Tr. 17). Therefore, although the ALJ accepted that the plaintiff had an additional impairment imposing an additional and significant work-related limitation of function, he concluded that the plaintiff's condition did not satisfy the criteria of 12.05C.

The plaintiff's past work as identified by a vocational expert (VE) consisted of working as a meat cutter which was "at best . . . semiskilled," a forklift operator position which was "considered semiskilled, at least on one of the forklift positions," landscape laborer, which was unskilled, and security guard position which was unskilled as the plaintiff performed it. (Tr. 233-4). The ALJ did not identify any other specific daily activities which he felt were inconsistent with mild mental retardation. The court notes that the plaintiff admitted that he did sometimes drive, although he spent most of his time sitting and watching TV, and added there was nothing else for him to do because he could not read. (Tr. 227, 230).

There is no question that the regulations "do not limit the question of validity [of IQ scores] to test results alone in isolation from other factors." Brown v.

07-77  Larry K. Aldridge

Secretary of Health and Human Services, 948 F.2d 268, 269 (6th Cir. 1991).  In Brown, however, the ALJ rejected the defendant's attempt to discredit an IQ score of 68 based on the belief that the plaintiff's daily activities were inconsistent with LOI 12.05C.  The Sixth Circuit noted that Mr. Brown was able to use public transit, had a driver's license, visited friends, could make change at a grocery store, could do his own laundry and clean his room, had completed sixth grade, had a limited level of reading comprehension demonstrated by his statement that he could follow a road atlas and a friend's testimony that she had seen him reading a newspaper, and that he had worked as a truck driver and recorded his mileage, the hours he worked, and the places he drove.  Id. at 270.  It did not consider these facts to be inconsistent with a valid IQ of 68 and noted that the defendant offered "no empirical evidence" in support of his conclusion.

Although the ALJ in the present case did not explore the issue in depth, he appeared to be relying primarily on the plaintiff's ability to perform the semiskilled job of forklift operator and possibly meat cutter in order to find that the plaintiff functioned at the borderline level rather than the level of mild mental retardation.  Neither of those positions appear to involve duties as complex as the Sixth Circuit described the plaintiff in Brown as having accomplished.[2]

---

[2]The Commissioner cites the unpublished case of Cooper v. Commissioner of Social Security, 217 Fed. Appx. 450 (6th Cir. 2007) as an instance in which the Sixth Circuit upheld an ALJ's determination that the plaintiff did not meet LOI 12.05C, in part

10

07-77 Larry K. Aldridge

Moreover, as the plaintiff correctly notes, the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR) states that:

> Mild Mental Retardation is roughly equivalent to what used to be referred to as the educational category of "educable." This group constitutes the largest segment (about 85%) of those with the disorder. As a group, people with this level of Mental Retardation typically develop social and communication skills during the preschool years (ages 0-5 years), have minimal impairment in sensorimotor areas, and often are not distinguishable from children without Mental Retardation until a later age. By their late teens, they can acquire academic skills up to approximately the sixth-grade level. During their adult years, they usually achieve social and vocational skills adequate for men of minimum self-support, but may need supervision, guidance, and assistance, especially when under unusual social or economic stress. With appropriate support, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings.

DSM-IV-TR, p. 43.

Indeed, the DSM-IV-TR states that even persons with "Moderate Mental Retardation" may be able to perform unskilled or semiskilled work under supervision. Id. If a moderately mentally retarded individual can perform semiskilled work, at least under some circumstances, it does not necessarily follow

---

because of a history of semiskilled work. The Sixth Circuit in this case did not cite Brown. To the extent that a unpublished opinion, however recent, conflicts with a published decision of the Sixth Circuit, this court is bound by the precedentual value of the published case.

07-77 Larry K. Aldridge

that the ability to perform semiskilled work is inconsistent with mild mental retardation.

The decision will be remanded for further consideration.

This the 3rd day of September, 2008.

Signed By:

*G. Wix Unthank*

United States Senior Judge